IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 02-cv-00084-REB-BNB

REVEREND APPLESEED NAPHTALI JESUSDAUGHTER,

Plaintiff,

v.

COLORADO MENTAL HEALTH INSTITUTE AT PUEBLO,
COLORADO DEPARTMENT OF CORRECTIONS,
SAN CARLOS CORRECTIONAL FACILITY,
DR. GRAHAM HOFFMAN,
JAMES MARSHALL,
LORRAINE DIAZ,
ALVIN SAIS,
LT. SCOLERI,
JOHN DOE NOS 1-10, and
JANE ROE NOS 1-10, in their individual capacities,

Defendants.
_____

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the **Defendants' Motion to Dismiss** (the "Motion"), filed August 31, 2005. For the following reasons, I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

## I.  STANDARD OF REVIEW

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true, and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A claim should be dismissed only where, without a doubt, the plaintiff could prove no set of facts in support of his claims that would entitle him to relief. Id.

## II.  BACKGROUND

The plaintiff, proceeding *pro se*, filed a Complaint on January 15, 2002, and an Amended Complaint on February 11, 2002.  On April 9, 2004, counsel entered an appearance for the plaintiff.  While represented by counsel, the plaintiff filed a Second Amended Complaint on August 16, 2004.[1]

The Second Amended Complaint asserts five claims.  Claim One is brought pursuant to 42 U.S.C. § 1983 and alleges excessive force and denial of appropriate medical treatment in violation of the Eighth Amendment's prohibition of cruel and unusual punishment.[2]  Claims Two through Five are tort claims brought pursuant to Colorado State law.  Claims Two through Five respectively allege intentional infliction of emotional distress, negligence and negligent infliction of emotional distress, assault, and battery.

The plaintiff is suing the individual defendants in their individual capacities.  She seeks compensatory and punitive damages, pre- and -post judgment interest, costs, and attorneys' fees.  She does not seek injunctive relief.

---

[1] I am aware that I must liberally construe the pleadings of a *pro se* plaintiff.  Haines v. Kerner, 104 U.S. 519, 520-21 (1972).  However, I do not liberally construe the Second Amended Complaint because the plaintiff was represented by counsel at the time she filed it.

[2] Claim One alleges excessive force in violation of the Eighth Amendment.  *Second Amended Complaint*, pp. 4-5, ¶¶ 22-27.  The plaintiff's allegations regarding denial of medical care are contained only in the section entitled General Allegations.  Id. at p. 4, ¶ 14.  However, both the plaintiff and the defendants are proceeding as if Claim One encompasses the allegations regarding denial of medical care.  *Motion*, pp. 4-7; *Response*, pp. 7-9.  Therefore, out of an abundance of caution, I address the allegations regarding denial of medical care as if they were asserted in Claim One.

### III.  ANALYSIS

### A.  CGIA Immunity

The defendants assert that the Court lacks subject matter jurisdiction over the plaintiff's state law claims, pursuant to the Colorado Governmental Immunity Act ("CGIA").  The CGIA sets forth the circumstances under which a private individual may bring an action in tort against the state, its political subdivisions, and its employees.  <u>Mesa County Valley School District v. Kelsey</u>, 8 P.3d 1200, 1203 (Colo. 2000).

Among other things, the CGIA waives governmental immunity for injuries arising from the operation of a correctional facility.  Section 24-10-106(1)(b), C.R.S.  However, this waiver "does not apply to claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction . . . ."  Section 24-10-106(1.5), C.R.S.

Section 24-10-109(1) of the CGIA requires that a plaintiff provide notice prior to filing suit:

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury.  Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

The CGIA requires that the written notice contain the following information:

> (a) The name and address of the claimant and the name and address of his attorney, if any;

> (b) A concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of;
>
> (c) The name and address of any public employee involved, if known;
>
> (d) A concise statement of the nature and the extent of the injury claimed to have been suffered;
>
> (e) A statement of the amount of monetary damages that is being requested.

Section 24-10-109(2), C.R.S.

A claimant must substantially comply with the notice requirements. Woodsmall v. Regional Transp. Dist., 800 F.2d 63, 68 (Colo. 1990) (en banc). Substantial compliance means that the claimant must "make a good faith effort to include within the notice, to the extent the claimant is reasonably able to do so, each item of information listed in section 24-10-109(2)." Id. at 69. See also Conde v. Colorado State Dept. of Personnel, 872 P.2d 1381, 1385-86 (Colo. App. 1994).

"The GIA's notice requirements are designed to permit a public entity to conduct a prompt investigation of the claim and thereby remedy a dangerous condition, to make adequate fiscal arrangements to meet any potential liability, and to prepare a defense to the claim." City of Lafayette v. Barrack, 847 P.2d 136, 139 (Colo. 1993) (citations omitted).

If the notice is sent through regular mail service, notice is effective upon receipt. Regional Transp. Dist. v. Lopez, 916 P.2d 1187, 1191 (Colo. 1996).[3]

---

[3] If notice is sent via registered mail, notice is effective on the date of mailing. Id.

The CGIA defines "injury" as "death, injury to a person, damage to or loss of property, of whatsoever kind, which, if inflicted by a private person, would lie in tort or could lie in tort regardless of whether that may be the type of action or form of relief chosen by a claimant." Section 24-10-103(2), C.R.S. An injury is "discovered" when the plaintiff knew or, through the exercise of reasonable diligence, should have known of the wrongful act. Trinity Broadcasting of Denver, Inc. v. City of Westminster, 848 P.2d 916, 923 (Colo. 1993) (en banc). Unlike the tort law concept of "discovery," which encompasses both the discovery of the injury and the discovery of its cause, discovery under the CGIA is triggered solely by discovery of the injury. As the court explained in the Trinity case:

> The Governmental Immunity Act does not permit an injured party
> to ignore evidence which would cause a reasonable person to know
> that he or she has been injured by the tortious conduct of another.
> The Act's notice period places a burden on the injured party to
> determine the cause of the injury, to ascertain whether a
> governmental entity or public employee is the cause, and to notify
> the governmental entity within 180 days from the time when the
> injury is discovered.

Id. at 927-28.

The continuing violation doctrine may not be applied to extend the 180-day deadline.[4] Gallagher v. Board of Trustees for University of Northern Colorado, 4 P.3d 386, 392 (Colo. 2002) (en banc).

---

[4] I conducted a hearing on June 20, 2006, wherein the defendants argued that a "reverse" continuing violation doctrine applies under the CGIA. According to the defendants, if a claimant is injured by different state officials on separate occasions, a claimant must file a notice regarding the first injury or he is forever barred from filing notice regarding the subsequent injuries--even though the subsequent injuries were inflicted on separate occasions by different individuals. The defendants' argument lacks any merit.

6

The defendants assert that the Court does not have subject matter jurisdiction over the plaintiff's state law claims because (1) at the time of her injuries, the plaintiff was convicted of a crime and incarcerated as a result, and (2) the plaintiff failed to comply with the notice of claim provisions of the CGIA.

The defendants present a factual challenge to subject matter jurisdiction. Therefore, I do not assume that the allegations of the Second Amended Complaint are true, and I have wide discretion to consider evidence in order to resolve disputed jurisdictional facts. Moreover, resolution of the jurisdictional issue does not touch on the merits of the case. Consequently, I analyze this issue under the standards applicable to Rule 12(b)(1), Fed. R. Civ. P., rather than under Rule 12(b)(6) standards. Pringle v. United States, 208 F.3d 1220, 1222 (10th Cir. 2000).

The plaintiff disputes that she was incarcerated as the result of being convicting a crime at the time relevant to the claims asserted here. She further disputes that she failed to comply with the CGIA's notice provisions. To resolve these factual disputes, I conducted a limited evidentiary hearing on June 20, 2006. I make the following findings of fact and conclusions of law with regard to the CGIA jurisdictional issue:

(1) In September 1989, the plaintiff was serving a ten year sentence at the Colorado Women's Correctional Facility for a drug offense.

(2) On December 24, 1992, the plaintiff was transferred to the Colorado Mental Health Institute of Pueblo ("CMHIP").

(3) In July 1994, the plaintiff received a statutory discharge from the 1989 conviction. She continued to stay at CMHIP and became a permanent resident of CMHIP.

(4)     On October 14, 1999, the plaintiff was transferred from CMHIP to the San Carlos Correctional Facility ("SCCF") after being charged with assaulting a nurse. She pled no contest to the assault charge on April 13, 2001, and was sentenced to time served. The plaintiff continued to be housed at SCCF after April 13, 2001, however, but without a criminal conviction.

(5)     In January 2002, the plaintiff was moved to the Denver Women's Correction Facility where she stayed until February 3, 2003. On that date, she was transferred to CMHIP. She stayed at CMHIP until June 27, 2005, when she was placed into the community, where she remains today.

(6)     The plaintiff mailed a written notice (the "Notice") to the Office of the Attorney General of Colorado pursuant section 24-10-109(1) of the CGIA. *Defendants' Exhibit A* (submitted at the June 20, 2006, hearing). The Notice was sent via regular mail service and was received by the Colorado Attorney General's Office on December 19, 2001. Id. at pp. 1, 5. Therefore, the Notice was effective as of December 19, 2001. The Notice contains the following statement of the factual basis for the plaintiff's claim:

> The basis of my claim is for the willful and wanton affliction of psychological abuse, mental anguish, loss of property, denial of personal possessions, obstruction of correspondence tampering with mail, excessive force, refusal to file grievances to exercise state internal remedies, denied legal access and the right to call legal (attys) counsel committed by both the Colorado Department of Corrections employees and the Colorado Department of Institutions employees who I am holding liable for injuries arising out of the acts and omissions of the essential personnel, occurring during the performance of duties and within the scope of employment when I was afflicted by the above defendants conduct of the subordinate essential personnel whose conduct was done heedlessly and recklessly without regard to the consequences or the rights and

> safety of others particularly me, the plaintiff.  From Oct. 14, 1999,
> til present Dec. 14, 2001.

Exh. A at pp.1-2.

(7) The following injuries were discovered by the plaintiff within 180 days of filing the Notice (on or after June 22, 2001): (a) in August of 2001, defendant Scoleri and other male guards ordered her to take off her clothes; a stun gun was applied to her face; and she was not treated for the burns resulting from the use of the stun gun; and (b) in October 2001, her water was shut off; she had not bathed in two weeks; she was forced to lay in her own feces for seven days; Lieutenant Scoleri applied a stun gun to her thigh; and she was not treated for the burns resulting from the use of the stun gun.

(8) The plaintiff was not incarcerated as the result of a conviction at the time she filed notice of these claims.  Therefore, the plaintiff's claims based on the August and October 2001 injuries are not barred by the CGIA's proscription of suits by incarcerated individuals.

(9) The remaining injuries alleged by the plaintiff were discovered prior to June 22, 2005.  Notice of these injuries was not provided within 180 days of discovery as required by the CGIA.  Therefore, the Court does not have subject matter jurisdiction over the remaining alleged injuries.

(10) The plaintiff's Notice states that she suffered the following injuries from October 14, 1999 until Dec. 14, 2001: "willful and wanton affliction of psychological abuse, mental anguish, loss of property, denial of personal possessions, obstruction of correspondence, tampering with mail, excessive force, refusal to file grievances to exercise state internal remedies, denied legal access and the right to call all legal (attys) . . . ." *Defendants' Exhibit A*, p. 1. The Notice states that the actions were committed by the Colorado Department of Corrections and the

Colorado Department of Institutions. The Notice lists the names of the "employees involved." Id. at p. 2.

The Notice does not provide any facts to describe the type of abuse, mental anguish, or excessive force. Nor does it specify which employee inflicted which injuries, the date of the injuries, or in which facility the injuries occurred. In addition, the Notice does not provide a concise statement of the nature and the extent of the August and October 2001 injuries, nor does it provide a concise statement of the factual basis of the claims, including the date, time, place, and circumstances of each act, omission, or event complained of. Therefore, the plaintiff did not substantially comply with the notice requirements or the CGIA.

Because the plaintiff did not substantially comply with the CGIA's notice requirements, the Court lacks subject matter jurisdiction over the plaintiff's state law tort claims. I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks dismissal of Claims Two, Three, Four, and Five for lack of subject matter jurisdiction pursuant to the CGIA.

### B. Eleventh Amendment Immunity

Surprisingly, the defendants do not raise Eleventh Amendment immunity. I must address Eleventh Amendment immunity, however, because it is implicated with respect to the subject matter jurisdiction of this court to determine the plaintiff's claims. Koerpel v. Heckler, 797 F.2d 858, 861 (10th Cir. 1986) (stating that "[i]nasmuch as federal courts are courts of limited jurisdiction, the court may and, in fact, has an obligation to inquire into its jurisdiction *sua sponte*").

The Eleventh Amendment bars suits in federal courts against unconsenting states by the state's own citizens and by citizens of another state. Port Auth. Trans-Hudson Corp. v. Feeney,

495 U.S. 299, 304 (1990). Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979).

The Eleventh Amendment precludes federal jurisdiction in suits against a state or state agency either for money damages or for injunctive relief. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984); Ellis v. University of Kansas Medical Center, 163 F.3d 1186, 1196 (10th Cir. 1999). The Eleventh Amendment also precludes federal courts from granting monetary damages or injunctive relief against state officials on the basis of state law. Pennhurst, 465 U.S. at 106. The Eleventh Amendment does not preclude federal courts from granting monetary damages or injunctive relief against state officials sued in their individual capacities on the basis of federal law. See Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Thus, the Eleventh Amendment bars (1) all of the plaintiff's claims as against the Colorado Mental Health Institute at Pueblo, the Colorado Department of Corrections, and the San Carlos Correctional Facility; and (2) the plaintiff's state law claims as against the individual defendants. Accordingly, I respectfully RECOMMEND that Claims Two, Three, Four, and Five as against the individual defendants and Claims One, Two, Three, Four, and Five as against the Colorado Mental Health Institute at Pueblo, the Colorado Department of Corrections, and the San Carlos Correctional Facility be DISMISSED as barred by Eleventh Amendment immunity.

### C.  Failure to Exhaust Administrative Remedies

The Motion asserts that the plaintiff's claims must be dismissed because she has failed to exhaust her administrative remedies under the Prison Litigation Reform Act. The defendants

11

withdrew this argument at the hearing on June 20, 2005. Accordingly, I respectfully RECOMMEND that the Motion be DENIED AS MOOT to the extent it seeks dismissal of the plaintiff's claims for failure to exhaust administrative remedies.

The Second Amended Complaint alleges that "Defendant Alvin Sais and one or more John Doe and/or Jane Roe Defendants inhibited, ignored, or destroyed Plaintiff's grievances." *Second Amended Complaint*, p. 3, ¶ 16. The Second Amended Complaint, however, does not assert a claim for relief against defendant Sais. I respectfully RECOMMEND that defendant Sais be DISMISSED from this case.

### D.  Qualified Immunity

The individual defendants assert that they are entitled to qualified immunity on Claim One. Qualified immunity shields government officials from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted).

When analyzing the issue of qualified immunity, the court must first determine whether the plaintiff has sufficiently alleged the violation of a statutory or constitutional right. If the plaintiff has asserted such a violation, only then does the court inquire whether the right was clearly

established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999). Accordingly, I now look to the Second Amended Complaint's allegations to determine if the plaintiff has sufficiently alleged a violation of her constitutional rights.[5]

Claim One alleges that, in violation of the Eighth Amendment, the plaintiff was subjected to unjustified gas attacks and stun gun attacks, and that she was denied medical treatment for the gas and stun gun attacks, her disability and mental illness, her Hepatitis C, and her diabetes.

### 1. Excessive Force

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The language of the Eighth Amendment indicates "an intention to limit the power of those entrusted with the criminal-law function of government." Whitely v. Albers, 475 U.S. 312, 318, (1986) (quoting Ingram v. Wright, 430 U.S. 651, 664, (1977)). The Eighth Amendment prohibits the use of force to maliciously or sadistically cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

The plaintiff alleges that defendant Scoleri and/or one or more of the John Doe and/or Jane Roe defendants participated in stun gun and gas attacks that were not necessary and were not objectively reasonable. These allegations are sufficient to state a claim for excessive force in violation of the Eighth Amendment. The plaintiff's right to be free from excessive force was

---

[5]In their Motion, the defendants argue that the plaintiff is subject to a heightened pleading requirement upon assertion of qualified immunity. *Motion*, 8. The defendants concede in their Reply that United States Supreme Court and the Tenth Circuit Court of Appeals have abolished the heightened pleading standard upon which they rely. *Reply in Support of Motion to Dismiss*, filed November 28, 2005, p. 7; Crawford-El v. Britton, 523 U.S. 574, 595 (1998); Currier v. Doran, 242 F.3d 905, 916 (10th Cir. 2001).

13

clearly established during the time period of the alleged attacks. See id. Accordingly, I respectfully RECOMMEND that the Motion be DENIED insofar as it seeks dismissal of Claim One's allegations regarding excessive force.

### 2. Denial of Medical Care

A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." Id. at 104-05. To establish a claim for deliberate indifference, a plaintiff must prove both an objective component and a subjective component.

The objective component is met if the inmate's medical need is sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)).

The subjective component to a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

To survive a motion to dismiss, a plaintiff must allege (1) a sufficiently serious medical need and (2) a sufficiently culpable state of mind. Riddle v. Mondragon, 83 F.3d 1197, 1205-06

(10th cir. 1996). Conclusory allegations, without supporting factual averments, are insufficient to state a claim for deliberate indifference in violation of the Eighth Amendment. Id. at 1205.

The plaintiff alleges the following:

> During her stay at the CMHIP and the SCCF, Defendants failed or refused to provide Plaintiff appropriate medical treatment, including, without limitation, treatment in connection with (1) the gas and stun gun attacks, (2) Plaintiff's disability and mental illness, and (3) Plaintiff's Hepatitis C and diabetes. Upon information and belief, Dr. Graham Hoffman, James Marshall, Lorraine Diaz, and one or more John Doe and/or Jane Roe Defendants were responsible for the failure or refusal to provide Plaintiff appropriate medical treatment.

*Second Amended Complaint*, p. 3, ¶ 14.

The Second Amended Complaint does not allege any facts to support an inference that the defendants acted with deliberate indifference. I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks dismissal of Claim One's allegations regarding deliberate indifference to the plaintiff's medical needs.

### E.  Failure to Allege Sufficient Facts

The defendants complain that Claim One fails to state a claim upon which relief can be granted because it does not specify when and where each gas attack and stun gun attack took place. *Motion*, p. 10. The Federal Rules of Civil Procedure require only a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Claim One's allegations regarding the gas and stun gun attacks are sufficient to satisfy Rule 8. The defendants can learn when and where the attacks occurred through discovery.

### IV.  SUMMARY OF REMAINING CLAIMS

15

If my Recommendation is accepted, only Claim One will remain as against defendant Scoleri and/or one or more of the John Doe and/or Jane Roe defendants in their individual capacities for use of excessive force in violation of the Eighth Amendment.

## V.  CONCLUSION

For the reasons stated, I respectfully RECOMMEND that Defendants' Motion to Dismiss be GRANTED IN PART and DENIED IN PART as follows:

(1)  GRANTED insofar as it seeks dismissal of Claims Two, Three, Four, and Five for lack of subject matter jurisdiction under the CGIA;

(2)  DENIED AS MOOT to the extent it seeks dismissal of the plaintiff's claims for failure to exhaust administrative remedies;

(3)  DENIED insofar as it seeks dismissal of Claim One's allegations regarding excessive force; and

(4)  GRANTED insofar as it seeks dismissal of Claim One's allegations regarding deliberate indifference to the plaintiff's medical needs.

I further RECOMMEND that Claims Two, Three, Four, and Five as against the individual defendants and Claims One, Two, Three, Four, and Five as against the Colorado Mental Health Institute at Pueblo, the Colorado Department of Corrections, and the San Carlos Correctional Facility be DISMISSED as barred by Eleventh Amendment immunity.

I further RECOMMEND that defendant Sais be DISMISSED for failure to allege a claim against him.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific,

written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated June 26, 2006.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge